May it please the Court, Michael Freeman, appearing on behalf of the U.S. Department of Appellants. The United States and Elko County, in this case, are attempting to use a settlement agreement to circumvent the laws that govern disposal of federal property. If they succeed, the settlement, in this case, will virtually assure that the South Jarbidge Canyon continues to be damaged by off-road vehicles and motorized traffic. I'd like to start, though, with the intervention issue in this case. This panel has already decided the intervention question in our favor during the first appeal of this lawsuit. In 2002, this Court remanded the case with express directions that the trial court grant us intervention in a lawsuit between Elko County and the United States. On remand, the trial court flatly The trial court denied intervention based on an argument that had been presented to this Court in the first appeal. Let me just ask you, how have you shown that you meet the requirements of 24a to intervene when you have no claim to the property? I believe we have no Ninth Circuit case on this. I know there's a Tenth Circuit case. I'm sorry? There's a Tenth Circuit case, but as far as I know, there is no Ninth Circuit case on this issue. Are you claiming that because it's the law of the case, the district court judge simply had to assume that we found that the requirements of Rule 24a had been met? What is your argument here? And how do you answer the problem of not having a claim to the property itself, or do you say you have a claim? Go ahead. First, Your Honor, our position is that it was the binding law of the case that we be granted intervention. The United States, in the first appeal, argued that we were not in – that we could not intervene in the lawsuit without asserting a property interest in the South Canyon. By remanding this case with directions that our motion to intervene be granted, this Court rejected that argument by necessary implication. Otherwise, if that argument had been accepted by the Court, the Court would not have ordered that we be granted intervention. On the merit – and for that reason alone, the intervention ruling should be reversed. With regard to the substance of the issue, Your Honor, our legally protected interest in this case does not have to be protected under the same statute that ALCO files its claim. It doesn't have to be protected under the Quiet Title Act. It's not protected under the same statute that ALCO, NEPA, and the other statutes we've discussed in our briefs. And for the reasons we've discussed in our briefs, both in this case and in the first appeal, the settlement in this case impairs those legally protectable interests. In short, we're entitled to intervene because the settlement here virtually assures that an area we're trying to protect will continue to be damaged by off-road vehicles. Ginsburg. Well, so when we allow, we send it back that you should intervene, do we have to reach the merits of the settlement? If you send it back? Your Honor, we think that it would be appropriate for the Court to do so for a number of reasons. The first was the question. No, the question was, if we send it back with directions that you're permitted to intervene, what happens to the settlement? The settlement should be reconsidered by the trial court in light of this Court's ruling. See, I'm sort of mystified by your argument as to why it's being made so difficult. I thought, maybe I don't understand the procedural posture of this case correctly, but I thought that the proposed, at the time of our earlier opinion, the settlement had been proposed but had not yet been approved. That's incorrect, Your Honor. Is that incorrect? It had been approved? At the time of this Court's first opinion in 2002, the trial court had approved the settlement as a consent decree. On remand, we asked the Court to vacate it, and ultimately what the Court did was to suspend the effectiveness of the settlement agreement in light of the arguments we presented in the trial court. What we're asking the Court to do is to reverse on the intervention question, vacate the 2006 order reinstating the consent decree, and remand the case for further consideration. That outcome, if the 2006 reinstatement order is vacated, that leaves the settlement in a posture where it was suspended, it's been suspended as it was by the trial court's 2003 order. That order directed Elko County and the United States to come into compliance with the law under FLTMA or other statutes for the – given the settlement's recognition of a right-of-way. With regard to the merits or with regard to the substance of the intervention issue, we know that as a degree of the court's discretionary authority, it's not a matter of the court's discretionary authority, it's a matter of the court's discretionary authority. We meant – we reversed and remanded with instructions to grant the motion. The motion was to intervene. If we meant what we said, and say it again in case anyone didn't understand, the question is what is the posture of the case then? You go back, you are allowed to question the settlement agreement. What happens if you don't agree to the settlement agreement? If we don't agree to the settlement agreement? Yes. We would be – we would be granted intervention to present our arguments and to be heard with regard to the substance of the agreement. The court has already accepted our – the argument that we made, which is that it was an illegal settlement that didn't comply with the law.  And so we are asking that Judge Hagan, in 2003 and 2004 in the trial court – we don't know yet exactly how the parties would choose to proceed once this case is remanded, but what we are asking for is that we be allowed to intervene in those proceedings in the future. I didn't ask my earlier question right, so let me ask it the right way. At the time of the motion to intervene, the settlement had not been approved. That's correct. Okay. And when we held that you were entitled to intervene, it was in order to litigate the question of whether or not the settlement – whether or not that – I suppose – either whether or not that settlement was appropriate or whether or not your interests had been taken into account. I would think that if there was going to be a settlement of the case, then you would have to be a party to the settlement. That's what I'm not understanding. If your original motion to intervene was timely, and that's what we said. Your Honor, under the law, we would be made a party to the case. But the law doesn't – and I cite Local 93 from the Supreme Court on this issue – the existing parties, the United States and Elko County, can settle this if we're only role is as an intervener in the Quiet Tidelap case between Elko and the United States. For – but we are entitled to be heard and to appeal that settlement if it was re-entered again or it was entered in the first place. That's why we also asserted cross-claims in this case, for the reason that if on remand or at a later date, the Elko and the United States attempted to salvage this settlement by entering it as a contractual non-consent decree settlement, we would still have a claim to challenge that agreement. Kennedy, wouldn't the time to challenge it be then, not now? Your Honor, there's – the case law allows us to intervene both in their claim and to bring it – because the claims already exist. No, no, I'm not suggesting you couldn't bring an appeal. I'm saying the time to bring the appeal would be if you're injured after we remand it. And we have a – I guess I'm not sure I understand Your Honor's question. We have brought the appeal after the settlement was reinstated. Yes. But that hasn't happened – now, assuming we go back in time to where you made a motion to intervene and say you should have been granted that motion, and we say it again, isn't that all that happens now? No, Your Honor. The – this Court can and frequently does reverse a ruling, deny intervention, and then because it's addressed, it's resolved the intervention question, also goes to the merits of the lower court's decision deciding the case. That's what we're asking. But why should we go to the merits, because we don't know what will happen when you go back and play your proper role as an intervener? Maybe you'll be so persuasive this time. Your Honor, given the – what the court – the arguments we made to the trial court and the basis for the trial court's order reinstating the settlement, we don't think there's any – we think it's highly likely, if not almost certain, the trial court would, without further guidance from this court, reinstate the settlement on the same basis. Well, you were – there were two – basically two claims here. What – this was originally an environmental action, wasn't it, by the government? Correct. It was trying to enforce the environmental laws because all these people were taking the wildlife, and then the government essentially switched positions after an election, which happens, I guess. Isn't that essentially what happened? Generally, yes, Your Honor. I would note that the government's trespass action was not filed initially against Elko County. It was filed against private individuals. Elko's Quiet Title Act claim was the only claim that was actually ever filed and accepted in this case. The United States moved to admit its complaint later in the proceedings, but as far as we can tell from the record, that was never accepted for a claim. Well, how did Elko County get in? Elko County filed a Quiet Title Act claim, that's right. And they – okay. Yes. I just want to make sure I understand your position. If we demand do not reach the merits, do you still wish to pursue your cross-claims at this time? Absolutely we do, Your Honor, yes. All right. And the reason for that is, since we don't know what the settlement may be, you're presuming it's going to be against you and not in your favor. Do you need to preserve the cross-claims now, or can you do it later? Your Honor, we think we could do it later, given that the cross-claims were dismissed on a ruling of law. That ruling is brief before this Court. We think it would be appropriate to resolve that here to provide guidance to the trial court. That helps me. Thank you. If I – I would like to turn to the merits of the settlement here. Are there two – just let me – are there two different cases before the district court? No, there was a single case. One case. A single case, a single settlement. And what the settlement accomplished here was to, in effect, recognize a right-of-way in Elko County's favor. Congress has enacted a number of statutes that govern when Federal agencies can dispose of Federal property. Let me – I know you want to get to the merits, but aren't you really arguing that your appeal on the intervention is moot because it's not going to do you any good, and that's why you want to proceed now on the merits, because you're going to presume that your – if you intervene, it will be – have no practical effect? No, Your Honor. It's not moot because we don't know yet what exactly will happen on remand. Well, that's what – that's what I thought. But you want us to get to the merits as if on remand you're going to lose and have no effect. Your Honor – Can you have it both ways, that you need to intervene because you may accomplish something, and then say, no, we don't really need to intervene because we're going to lose anyway? No, Your Honor. The – we are asking the Court to reverse the ruling on intervention, which is – or cross-claims, which is a predicate for our right to challenge the merits of the settlement. We think that the Court should reverse the cross-claims and the intervention and get to the merits of the settlement, because if the Court simply reverses on intervention, it won't provide the trial court with any guidance as to – or review of the errors it made regarding the merits of the settlement. We're very likely to be right back up here on a third appeal. Well, on the merits, aren't your arguments with respect to the merits of the settlement essentially the arguments that you – that you wanted to intervene on because the government was no longer representing your position in the – with respect to the environmental issues? They're very similar, yes. Yeah. I mean, they're – okay. I mean, they're cast a little differently, but they're essentially the underlying grievance, aren't they? That's correct, yes. Yeah. What the settlement does here is to – Well, but what – okay. I'm sorry to – I know you want to get to the merits, but what do you think that we – what do you think our mandate was with respect to intervention? The mandate was to grant us intervention in the lawsuit between Elko County and the United States so that we could be heard on our challenges to the substance and merits of that settlement agreement. And you were not permitted to – to have those considerations heard other than as an amicus? Not fully. We were able to get many of our arguments out, but for some very specific reasons we didn't get to access to a number of evidence or record that we should have been entitled to as an intervener. That's why we were prejudiced here. And on remand, if the Court reverses on intervention, we would be entitled to get additional evidence that would strengthen our argument that the settlement here was illegal. But you say that as an intervener you don't have a right to hold up the settlement because you don't agree to it. We don't have a right to block the settlement. We do have a right to be heard and to raise issues to challenge the settlement. Turning to the merits of the settlement agreement. Because it's the – because you don't have an interest in the property? That's what – we don't have – we're not asserting an interest in the property, but the effect of the settlement agreement is to impair our interest in protecting an area that we use and enjoy for recreational and aesthetic purposes. So it impairs your environment – your interest in the environment? That's correct. Right. And what the settlement accomplishes is to recognize a right of way in Elko County's favor without complying with a number of laws that were – that are required for granting or disposing of a Federal interest in property. Those include FLIPMA, the Quiet Title Act, and other laws. Without complying with those laws, the United States simply doesn't have authority to recognize those right of ways or dispose of that property. And in fact, it's – Aren't your interests, and we're talking about the merits, really protected? Because the settlement states that any action Elko takes on the land is still subject to the Forest Service approval. Why is that not adequate? That's actually consistent with the settlement disclaiming a right of way, because what the settlement says is that for reconstruction of the road, Elko needs to get Forest Service approval. That's true for any right of way on Federal land. I'd cite the Vogler decision and the Forest Service regulations at 261.10. What the settlement also says is that for routine maintenance, Elko's rights will be the same. Elko will seek whatever approval or go through whatever procedure is necessary for any other right of way. In the settlement, did the Government essentially agree that Elko title, Elko County had title to the road? In effect, yes. What it did was, as it said repeatedly, both to this Court and to the trial court, it disclaimed its interest in the right of way by allowing itself to be put under a court order not to dispute Elko's right of way claim. In fact, the settlement goes on explicitly to say that Elko's rights will be no different from those of anyone else holding an RS-2477 right of way on Federal land. Let me go back to the cross claims. If we don't mention the cross claims and just remand, how does that harm you other than you want us to give direction to the district court judge that he should consider those? I mean, you still could bring them again, right? Your Honor, given we could ask the Court to reconsider its earlier ruling dismissing those claims, yes. But the trial court's ruling was done on a matter, on a ruling of law, and we think it's been fully briefed to this Court. We think it would be appropriate for the Court to also provide guidance, reverse and amendment. It would be guidance, but your basic rights would not be impinged upon because he said no cross claims because you have no standing. That's basically what he said. That's right. And that ruling was incorrect. On remand, without a ruling reversing that decision from this Court, we're faced with the law of the case from the trial court on those cross claims, which we believe under the language of the district court judge. I'm sorry? If we said you had standing. The Court said we had standing for the cross claims, but that they didn't state a claim under the Administrative Procedure Act because, according to the trial court, the Justice Department settlement decision here didn't represent a final agency action within the meaning of the APA. That ruling was wrong as a matter of statutory construction, as we've discussed in our brief. The Justice Department's Federal agency and its recognition of a right of way in this settlement is an agency action. In this Court, the parties are not defending the trial court's rationale for dismissing the cross claims. Instead, they're arguing that the settlement here represented an action committed to agency discretion by law. The allocations we're making, though, are that this is not committed to agency discretion because the agency didn't have the discretion or the authority to recognize a right of way without complying with the law for doing so. That states a claim under the APA, and that's why we're asking the Court to reverse on the cross claims. If I reverse, you're saying that you want the Court to say that you did have standing. I'm sorry, Your Honor? Do you want the Court to say that you did have standing? The trial court held that we had standing to bring the cross claims. And then they held that under the APA there was no final decision? No. It was actually not a final decision. Settlement is not a final decision because it's committed to agency discretion? Was that the whole thing? That wasn't the trial court's ruling, no. It wasn't? No. The trial court's ruling was that this was not and that the Justice Department's decision to settle this case was not an agency action under the APA. Right. That's incorrect. It wasn't decided on a finality, non-finality basis. But what's the final action, agency action under the APA then? The decision to settle? That's right. The trial court didn't rule that this wasn't final action. The trial court ruled that this was an agency action within the meaning of Section 551. So is every decision to settle any case final agency action that can be attached? In this case, yes. In many cases, and probably in most cases, the Justice Department's settlement decision is a final agency action, but it's one that's typically viewed as committed to agency discretion by law. Here, that presumption doesn't apply because the Justice Department and the Forest Service don't have discretion to disregard the congressional mandates for recognizing rights of way on Federal land. They don't have authority to do so or discretion to do so. And those requirements are not. But that assumes that it's Federal land. There's no dispute that this is Federal land. The question is whether ELCO has an easement or a right-of-way over that Federal land. And in this settlement, the United States effectively recognized an easement, which is a species of property interest, over the national forest. Kagan. Well, I realize you're over your time and I'm hung up on this cross-claim kind of thing. Now, if we reband to allow you to intervene, in your briefs you said the only way we can get any relief, you argued that the cross-claim would be the only way to protect your interests. But if you're allowed to intervene, you have a way to protect your interests. Isn't that right? Maybe I should clarify the point, Your Honor. If we're allowed to intervene, we can protect our interests by raising our arguments and presenting evidence in opposition to the settlement agreement as being an intervener in the case between ELCO and the United States. But what we also want to do is assert cross-claims challenging the settlement agreement, because those provide us with an independent basis of jurisdiction for protecting our rights. And there's a number of cases, including Local 93 and this Court's decision in Thompson, where the Court actually encouraged the party to assert those kinds of cross-claims in order to provide an additional level of additional protection and an additional basis of jurisdiction for protecting their rights. I think I now understand. Thank you. Thank you. If the panel has no further questions, thank you. May it please the Court. I'm Elizabeth Ann Peterson here from the Justice Department. On behalf of the United States and with me at counsel table is Kristen McQuarrie. We will be dividing our time. Kristen represents ELCO County. As I believe Mr. Freeman made quite clear, his client has been fully represented in the district court in this matter. The district court did follow this Court's mandate and allow the Wilderness Society to intervene in this action, but it limited the intervention to those matters in which it could actually issue relief that would affect the interests of the Wilderness Society and restricted, therefore, the Wilderness Society's participation. Well, if this proposed settlement cannot be in any way challenged for reasons of its violation of environmental laws, then what was left to be, for purposes of the intervention, for them to intervene in? I should back up. There was no violation of environmental laws. And I would like to start at the beginning of the process. This action was brought in trespass. It was brought against individuals who had gone onto federal land, which ELCO County believed it had a right-of-way over. They had done severe damage to that land, and the Forest Service came in to stop and prevent future trespass on that land, which was by this time severely degraded by the actions of the ELCO County representatives. The district court joined ELCO County, which the United States included then as a trespass defendant. ELCO County defended on the theory that it owned a right-of-way there that would not be regulated by the United States. At that point, the district court forced mediation on the parties, essentially, and they mediated the case at great length. Well, that's not unusual. And reached a settlement that did not get accepted by the ELCO County Commission. A second attempt at mediation did reach a settlement that was accepted by the ELCO County Commission because that second settlement used the term RS-2477 right-of-way. There was no disclaimer of a right-of-way. There was no recordable property interest given to the county in that case, and the Forest Service retained full authority to regulate on federal land. The agreement also contains dispute resolution provisions that would come into play in the event that the Forest Service were to regulate beyond what ELCO County considers consistent with an accommodation of its right-of-way. In other words, as the district court correctly concluded after two years of suspension following this Court's mandate, the settlement did not convey a property interest to ELCO County. Instead, there was a settlement in which the Federal the Forest Service agreed to regulate on the right-of-way as though ELCO County had rights there. It has not impacted any decision of the Federal of the Forest Service to date, and there is no indication that it will in the event, however, that it did. The Wilderness Society could challenge the Forest Service's decision to regulate short of what would be appropriate on the ground that there is a right-of-way there. And at that time, the Wilderness Society would be entitled to any relief appropriate to an APA challenge to the Forest Service's decision. And ultimately, the RS-2477 claim, which remains open, if necessary, could be determined. At this time, there's no reason to believe that title in the right-of-way has any connection to regulation over it. And for that reason, the Wilderness Society clearly lacks standing here and has intervened only to disrupt the settlement between the Forest Service and ELCO County that is in no way related. Kagan. What is their interest? I mean, if it's not just meanness, they have some interest here. Oh, they certainly believe that we will regulate it differently depending on ownership of that right-of-way. The United States position is that they are wrong and that there's no evidence of that. They, in fact, have already filed a lawsuit challenging the Forest Service's regulation of this exact right-of-way. Well, I may be that I get, I guess, I at least, when this case was presented before, was under the impression that the concern here was not just about the degradation of the land by trespassers going on it, but that the concern was also that the trespassers were fishing and were taking the land of endangered species, and that that was a concern as well. And that may, I may be incorrect in that, but that is what our prior opinion appears to reflect that understanding. As I read this record, the initial trespass action had nothing to do with the use of this area for fishing. The endangered species at issue is the endangered bull trout, which was at that time listed only as threatened and is now listed as endangered. We don't know whether that's the result of Elko County's representatives' activities or not. It may well have been. There was an urgent need to bring reasonable regulation to this area, and regulation that could be effective, even in this area where there was such radical opposition to the Forest Service's activities. For that reason, the mediator that worked with the two parties in this case insisted on, and the parties themselves, I should say as well, insisted on an agreement that essentially embodies a long-term cooperation plan, under which the Forest Service will insist on strict compliance with all of its, all of the environmental laws that affect this area, and Elko County will have the term RS-2477 retained. It was concerned that it not be required to give up a claim. That claim remains. The claim that there may be a right-of-way remains. If at some point in the future that claim has to be adjudicated, it still can be. There was no need to adjudicate. Kagan. A right-of-way on the part of whom? The county claims to own a right-of-way over the South Canyon Road. That road now has been reconstructed. In cooperation between the parties and Elko County has agreed and has continued to comply with an agreement to subject any decision that it makes before taking any action on the road to approval by the Forest Service, which will see to the enforcement of all required environmental considerations. But what about the, excuse me, the decision to allow vehicular traffic on the road? That decision was made completely independent of the settlement, possibly not independent of the trespass. But the decision to restore it for use by high off-road vehicles was made by the Forest Service before the settlement was finalized. And that is the current regulatory regime on the road. I should add that that is also the decision that the Wilderness Society has challenged. And if there was anything wrong with that decision, including if that decision was based on an illegal consent decree, the place for Elko County, for the Wilderness Society's challenge is in that lawsuit, which is currently in district court. There is no need for any further litigation of this case. And Can I ask you one other thing about the rights of an intervener? Counsel said that an intervener can't block a settlement. Does an intervener have the right to participate in the settlement discussions before a settlement is reached? Not necessarily, Your Honor. The case law is What do you mean not necessarily? Well, as I read the case law, in this case, no one attempted to intervene before the settlement was complete. So this case is a good illustration. I believe they were well aware of it, but they may not have known what the terms were that were being agreed to. But the case law, as I read it, is that no party can prevent other parties from settling the case and thereby leaving the litigation. In fact, I think I can quote directly from the United States Supreme Court that it has never been supposed that any party could preclude other parties from settling their disputes and thereby withdrawing from the litigation. That's the decision. What case are you citing? That's actually Local 93 of the Firefighters Union against the City of Cleveland. And it's the case that the Tenth Circuit relied on when it stated in the San Juan County case involving a QTA intervention issue, which, as Your Honor pointed out earlier, is the only decision out there on this issue, that one thing that an intervener could not do in Quiet Title Act litigation would be to veto a settlement. And that is the only purpose for which the Wilderness Society has attempted to intervene in this litigation. And my time is up, and I need to cede the rest to my co-panel. May it please the Court. I'm Christine McQuarrie from Elko County District Attorney's Office. I have been involved with the Jarbid South Canyon case for 10 years now, and I'd like to clarify some of the factual background. The district court, sua sponte, added Elko County as a defendant when they sued the members of the Shovel Brigade. We filed our trespass claim as a defensive, the Quiet Title action as a defensive measure. Most members of the Shovel Brigade were residents of Elko County. I'd also like to clarify that the Great Old Broads and the Wilderness Society did not move to intervene until after the settlement was reached and approved. One of the issues is you commented that they might not have known about it. The settlement agreement was reached in 2001. From 1998 to 2001, there were probably every county commission meeting in Elko County, in fact, virtually every Elko County, which is Nevada's open meeting law requires notice and an opportunity to be heard in public deal, a public comment at every meeting. There was also a hearing by Elko County on the evidentiary merits of whether that was a county road in 1998. Right. After the settlement agreement ordered by the court to the U.S. Environmental Conflict Resolution, the first mediation, that went in front of the Elko County Commission pursuant to Nevada's open meeting law once again. It was a hotly debated and talked about at several meetings. That was open notice to the public. The terms of the agreement and the settlement agreement itself were open public documents. Ultimately, that failed because of the concern about the county commission, about RS-2477. The two most important things in the settlement process, both in the court-ordered mediation and the settlement process with Magistrate McQuaid, was the county's insistence on RS-2477 and the United States government's insistence upon following the federal environmental laws. Ms. Peterson is correct. We are here in the wrong case. The Gradle Broads and the Wilderness Society has specifically stated that their concerns are environmental. Separate from this lawsuit, they have filed suit protesting the opinion of the Forest Service to repair the Jarbidge South Canyon Road. That case is in federal district court and that's ongoing. If this lawsuit is undone, it's not really going to affect anything practically on the ground because those repairs are substantially complete. And I'm going to assume that they were done pursuant to federal environmental law with Clean Water Act Review, Endangered Species Act Review. Are you saying that the road is a done deal? It was on the radio last week. I did not go up there this summer, but they have been working on repairing, making the repairs. They made the decision a couple of years ago. The Gradle Broads and Wilderness Society filed a conditional appeal and then they followed through with the appeal of that decision. Well, you know, isn't your mootness argument without merit? Because this is a case, it's not about the road itself, but it's about the legal rights of the parties. Well, it's really about the road itself, Your Honor, because an RS-2477 right-of-way vested prior to the reservation of the forest and before the passage of FLTMA. So there is evidence going both ways, which creates enough uncertainty that we agreed to leave that open. They agreed to recognize that defensively we have asserted an RS-2477 right-of-way, and we believe the evidence shows that the right-of-way was in place far, many years before the implementation of the forest service in the Jarbidge area. But we agree there are some changes over time that might create some doubt if this was taken before a finder of fact. I'm sorry to interrupt, but what do you understand to have been the government's position when it filed the original trespass action? When it filed the original trespass action, certainly I would never presume to speak for the Federal Government, but there was a group of individuals that went up that attempted to repair the road with basically hand tools, and much like a civil disobedience, you know, First Amendment, showing your opinion through action rather than words. They didn't file for the appropriate point source permits. They didn't go for review under the Nevada Department of Environmental Protection. They wanted this road because of what? The tiny, very tiny town of Jarbidge is downstream. This is in the west fork of the Jarbidge River, and there had been what had originally washed it out was flood, a massive cobble, which is fist-size stones coming down to two of the side canyons off South Canyon Road, and it dammed up the river and caused it to jump onto the road in a couple of places, which caused all of this. It appeared it was fishing, and the bull trout was endangered? The bull trout was listed as threatened after the events that caused this lawsuit to come about. So taking the bull trout out of the picture, the wind is also one of the few roads up into the mountains. It doesn't go all the way to the wilderness area. It went approximately a half a mile to three-quarters of a mile to the wilderness boundaries, but it's a very hilly, steep area, kind of much like the mountains around here, and it's one of the few places you can get fire apparatus up close to the mountains or into the mountains to fight fire, and that had been a concern. So it has a lot of utility for firefighting purposes, getting equipment up there. It has utility for flood monitoring, particularly because the town of Jarbidge is in a canyon, and the walls are like this, so when it dams up, it creates a health and safety hazard for the people of those tiny towns. Also, there's quite a bit of picnicking up there, hiking. It is one of the few areas which you can get that close to the wilderness trailhead by vehicle. So if you also, you know, sprain your leg, break your leg, or doing something, it's one of the few ways that emergency services can get relatively close to help you. But it has a lot of utility. But this whole issue is moot because this settlement agreement was reached in 2001. This is seven years later. Even though once the settlement agreement and the Forest Service and Elko County have abided by the settlement agreement, when you look at all the environmental protections that are built into the settlement agreement and the dispute resolution apparatus, and plus the other things Elko County agreed to do in the terms of the settlement agreement to do environmental mitigation on other parts of the road into Jarbidge, the road north of town to the Idaho border, in conjunction with the Forest Service, the Forest Service, as part of their South Canyon Repair Project, was also doing some tweaking of that road. And Elko County has agreed to contribute $50,000 to that, which they have done in various sort of ways, and changed their maintenance practices. Okay. Well, can you give me the number of the district court action? It's the Great Old Broads and the Wilderness Society v. the United States. And I've got Mr. Freeman has that case number. And I don't have that. I'll ask him. But prior to 2001, where the road, the South Canyon Road, had existed for more than 100 years, the Great Old Broads and the Wilderness Society never moved to intervene on the basis that the maintenance practice or the repairs were incorrect. After the settlement agreement was reached, they jumped in. The other thing that would be a shame is in the past 10 years. The government originally took the position that there was no right of way for a road, and that these people were trespassers, didn't they? Well, there was a road in place. I think their trespass was based on the fact that they didn't, those people did not go and get the appropriate permits and that they were individuals, not the sovereign, which was Elko County. And so they had the right to use the road, but if the easement existed, it existed in the name of the sovereign, which was Elko County. And we certainly disagree with some of Ms. Peterson's analysis of the type of right of way that it was. But in the past 10 years, and the settlement agreement builds in the framework of repairing relationships, that the mediator through the environmental conflict resolution process, which is a branch of the federal government, worked very hard in setting up a framework that both Elko County and the Forest Service could understand each other's viewpoints. And the settlement agreement also sets forth a process by which if there are disputes about the South Canyon Road, in fact the whole Jarbidge area, that there's a framework for dispute resolution where we don't have to posture and threaten and, you know, have bad feelings that we have a framework to work through that. It would certainly be a shame because as lawyers, you know, once you were tossed back into litigation, we sort of, you know, naturally jump to our advocacy roles and sometimes forget what happens on the ground. We've got a 10-years hard-fought understanding. There unjustified the griddle rods in the wilderness societies. Their fears are completely unjustified. We're arguing about arguing, Your Honor. Thank you. And you were asking about the current case pending in the district court? Uh-huh. That's 07-CV-170 in the District of Nevada. Okay. Does he have any time left? He has no time. Okay. Is that all right? Are there any questions of the other questions of the panel? All right. Thank you. Then the case just argued is submitted for decision. And that concludes the Court's calendar for this morning. The Court stands adjourned.
judges: Schroeder, Nelson, Reinhardt